## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES**[1] through and with his next friend and mother **LISA**, and **BRENNAN** through and with his next friend and mother **HEATHER**, on behalf of themselves and others similarly situated. | Civil Action **COMPLAINT** |
| **Plaintiffs**, | |
| v. | |
| **TOM WOLF, Governor of the Commonwealth of Pennsylvania,** in his individual capacity; and the **Secretary of Education PEDRO RIVERA**, in his individual capacity, and the **PENNNSYLVANIA DEPARTMENT OF EDUCATION**. | |
| **Defendants.** | |

---

[1] This Complaint uses pseudonyms to protect the privacy of named Plaintiffs, who are minor children, and their parents.

**INTRODUCTION**

1.    On Thursday, March 19, 2020 Governor Tom Wolf ordered the closure of all business that were not "life-sustaining" pursuant to his powers to proclaim the existence of a disaster emergency throughout the Commonwealth under 35 Pa.C.S. § 7301(c).

2.    All public and private schools in the Commonwealth were deemed not "life-sustaining" and were shut down on March 16, 2020.

3.    On April 9, 2020 Governor Wolf ordered that all kindergarten through 12th grade schools in the Commonwealth of Pennsylvania closed for the rest of the school year.

4.    Governor Wolf made no allowance for the special needs children with nonverbal and partially verbal children with autism have when he decided to shut all kindergarten through 12th grade schools closed for the rest of the school year.

5.    However, Governor Wolf allowed businesses to apply for "waivers" to keep physical workplace open if they were not among the industries his administration defined as "life-sustaining."

6.    Governor Wolf's waiver process has been opaque, arbitrary, and capricious.

7.    For example, the construction of a casino in Philadelphia was deemed "life-sustaining" by Governor Wolf.

8.    For example, Wolf Home Products, a York-based cabinet and building supply company that was formerly owned by Governor Wolf, was initially deemed "life-sustaining" by Governor Wolf.

9.    For example, the Dan Smith Candy Company, owned by Senate Pro Tempore Joe Scarnati – which makes and sells candies, chocolates and other specialty items – was also initially deemed "life-sustaining" by Governor Wolf.

10.    On May 8, 2020, Governor Wolf released a list of businesses who received

2

a successful waiver as "life-sustaining." The list of businesses considered "life-sustaining" includes:

    a. Keystone Tobacco in Wilkes-Barre.
    b. Jake's Fireworks Warehouse in Frackville.
    c. Brambles Florist in Lafayette Hill.
    d. Waffle Cabin in Lansdale.
    e. The Schuylkill Navy in Philadelphia.[2]
    f. Mayfair Fitness in Philadelphia.
    g. ITG Cigars in McAdoo.
    h. Bugden's Total Hair Replacement in Shenandoah.
    i. Arkropolis Marble & Granite in Colmar.
    j. Wertz Candies in Lititz and Lebanon.

11.     In arguments before the Pennsylvania Supreme Court, the Wolf administration argued that "the selection of which businesses to close requires that a balance be struck: close too few businesses and the disease will spread uninterrupted, while closing too many will make it impossible for people to access life-sustaining goods and services." *Friends of Danny Devito v. Wolf*, 68 MM 2020, *15 (Pa. Apr. 13, 2020).

12.     Thus, by definition, the Wolf administration now defines **tobacco manufacturers**, a hair restoration clinic, a purveyor of marble and granite and a fundraising organization for Philadelphia's Boathouse Row as providing "life-sustaining" goods and services or offering "support to life-sustaining businesses." *Friends of Danny Devito v. Wolf*, 68 MM 2020, *9 (Pa. Apr. 13, 2020).

13.     This, despite Governor Wolf's own warnings about the use of tobacco on November 27, 2019:

"Numerous studies have shown tobacco products, including smokeless tobacco and e-cigarettes, are particularly harmful and addictive to youths and young adults. Raising the age

---

[2] The "Schuylkill Navy" appears to be an organization supporting rowing on the Schuylkill River. For example, it raises money for the "Big Dig Depth Restoration" of the Schuylkill River. *See* https://boathouserow.org/improve-river-infrastructure/

to 21 in combination with barring e-cigarettes at our schools will help us prevent young Pennsylvanians from engaging in this **dangerous behavior**." Emphasis supplied.

14.    Put another way, Governor Wolf has deemed companies that manufacture products that he deems as "dangerous" as, in fact, "life-sustaining."

15.    In stark contrast to the manufacture of tobacco, and because they are "life-sustaining," there are private companies providing one-on-one autism support and services for nonverbal and partially verbal children with autism in the Commonwealth.

16.    These private companies include but are not limited to Exceptional Learning LLC located in Schwencksville, Montgomery County, Potential, Inc. located in Yardley, Bucks County and Galena Autism and Behavioral Services located in Doylestown, Bucks County.

17.    The services and instruction children with autism receive at public schools in the Commonwealth are inarguably "life-sustaining." This is especially true if the construction of a casino, the manufacture of cabinets, the manufacture of chocolates, manufacture of tobacco, and hair restoration services were deemed as such by Governor Wolf.

18.    On April 27, 2020 the United States Department of Education Secretary Betsy DeVos stated that the Department of Education "is **not** recommending Congress pass any additional **waiver** concerning the **Free Appropriate Public Education** (FAPE) and Least Restrictive Environment (LRE) requirements of the **Individuals with Disabilities Education Act** (IDEA), reiterating that **learning must continue for all students** during the COVID-19 national emergency." Emphasis supplied.

19.    Since the closure of schools, nonverbal and partially verbal children with autism have been only been offered online learning.

20.    Online learning for nonverbal and partially verbal children with autism consists of video meetings between the children and their teachers and therapists.

21.    Due to the challenges nonverbal and partially verbal children have, the meetings must be facilitated by a parent or guardian and are limited in time and frequency.

22.    Additionally, nonverbal and partially verbal children with autism require intensive, in-person education to learn which includes, but is not limited to, hand-over-hand assistance.

23.    Many times, nonverbal and partially verbal children with autism do not transfer the skills they learn in the classroom to the home environment thus making online learning incompatible with in-person learning.

24.    This online learning is wholly inadequate to meet the needs of nonverbal and partially verbal children with autism who rely upon the in-person instruction they receive in school to prepare them for further education, employment, and independent living.

25.    Under the Individuals with Disabilities Act ("IDEA") 20 U.S.C § 1400 et seq., the term "child with a disability" means children "with intellectual disabilities (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance…, orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and, who by reason thereof, needs special education and related services."

26.    The purposes of the IDEA are "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."

27.     The IDEA governs how states and public agencies – such as the Pennsylvania Department of Education – provide early intervention, special education, and related services to more than 6.5 million eligible infants, toddlers, children, and youth with disabilities.

28.     Under 20 U.S.C § 1403(a) of the IDEA "a State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter."

29.     Furthermore, 20 U.S.C § 1403(b) of the IDEA states "(i)n a suit against a State for violation of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as those remedies are available for such a violation in the suite against any public entity other than a State."

30.     Many children with autism rely on augmentative/alternative communication ("AAC") to communicate because they cannot communicate their wants and needs verbally. AAC refers to a variety of modes - picture boards, speech-generating devices, tangible objects, manual signs, gestures and written communication.

31.     This lawsuit is filed on behalf of the hundreds if not thousands of nonverbal and partially verbal children with autism within the Commonwealth who rely on AAC and who receive instruction in public schools as required under the Individuals with Disabilities Act ("IDEA") and, pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), are entitled to have their educational needs met as adequately as the needs as non-disabled children are met.

32.     In order to prevail on an Americans With Disabilities Act ("ADA") claim in the Third Circuit, the plaintiff must demonstrate that he: "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of

the program or was otherwise subject to discrimination because of his disability." *S.H. ex rel. Durell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013).

33.    Nonverbal and partially verbal children who use an AAC are "disabled" as understood under the ADA.

34.    Nonverbal and partially verbal children with autism who use an AAC rights under the ADA are being violated when the only education they can receive is online education.

35.    This lawsuit is filed on behalf of nonverbal and partially verbal children with autism who are qualified to receive a free appropriate public education and have, due to the acts of the Defendants, been denied a free appropriate public education because of their disability.

36.    Section 504 prohibits discrimination against individuals with disabilities and prohibits this discrimination to the full range of state and local government services, programs, and activities (including public schools) regardless of whether they receive any Federal financial assistance.

37.    42 U.S.C. § 2000d(1) reads in relevant part "(a) State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act of 1973…"

38.    42 U.S.C. § 2000d(2) reads in relevant part "(i)n a suit against a State for violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State."

39.    Online learning does not meet the needs of nonverbal and partially verbal

children with autism who rely on AAC as adequately as it does the needs of non-disabled children.

40.    Consequently, online learning for nonverbal and partially verbal children with autism who rely on an assisted communication device and is violative of both IDEA and Section 504.

41.    By closing schools in the Commonwealth to nonverbal and partially verbal children with autism, Governor Wolf has ensured that these children cannot receive "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living" as guaranteed to them under federal law. 20 U.S.C. § 1400(d)(1)(A).

42.    Put simply, the only "public education" currently available to nonverbal and partially verbal children with autism – "online learning" – is not "designed to meet the unique needs" of nonverbal and partially verbal children with autism who rely on AAC and thus stunts their development preventing their preparation "for further education, employment, and independent living."

43.    Under the IDEA, "the provision of merely more than a trivial educational benefit is insufficient." *L.E. v. Ramsey Bd. Of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006). The Third Circuit has recognized that the benefit must be more than merely a *de minimus* one. *Ridgewood Bd. Of Educ. v. N.E.* 172 F.3d 238, 248 (3d Cir. 1999).

44.    The education that Governor Wolf has arbitrarily mandated for nonverbal and partially verbal children with autism who rely on AAC – online learning – provides nothing more than a "trivial educational benefit" and any such benefit it does confer is "*de minimus.*"

8

## JURISDICTION AND VENUE

45.    The claims in this action arise under the Individuals with Disabilities Education Act 20 U.S.C. § 1400 *et seq.*, including C.F.R. § 300.149; Section 504 of the Rehabilitation Act of 1973; and the Americans with Disabilities Act of 1990 § 42 U.S.C. 12101.

46.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court has the authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

47.    Plaintiffs' claims for costs are authorized by Fed. R. Civ. P. 54(d)(1).

48.    Plaintiffs' claims for attorneys' fees and costs are authorized by 34 CFR § 330.517, 29 U.S.C . § 794a(b) and 42 U.S.C § 12205.

49.    Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the events that give rise to this action occurred within the Eastern District of Pennsylvania.

## PARTIES

50.    Plaintiff James is a 7-year-old nonverbal student with autism who relies on AAC and the son of his mother Lisa of Bucks County, Pennsylvania. James is a "child with a disability" under the IDEA, and an "individual with a disability" under Section 504 and the ADA. 20 U.S.C. §§ 1401(3); 29 U.S.C. § 794(a); 34 C.F.R. § 104.3(j); 42 U.S.C. § 12102(1).

51.    James is a student in the Central Bucks School District ("CBSD").

52.    Lisa is James' mother.

53.    Plaintiff Brennan is a 7-year-old partially verbal student with autism who relies on AAC and the son of his mother Heather of Bucks County, Pennsylvania. Brennan is a "child with a disability" under the IDEA, and an "individual with a disability" under Section 504 and the ADA. 20 U.S.C. §§ 1401(3); 29 U.S.C. § 794(a); 34 C.F.R. § 104.3(j); 42 U.S.C. § 12102(1).

54.   Heather is Brennan's mother.

55.   Tom Wolf has been the Governor of the Commonwealth of Pennsylvania since on or about January 20, 2015 and is sued solely in his individual capacity. Governor Wolf maintains his principal office at the Office of the Governor, 508 Main Capitol Building, Harrisburg, PA 17120.

56.   Tom Wolf is responsible for failing to include public schooling for nonverbal and partially verbal children with autism on his list of "life-sustaining" businesses.

57.   Pedro Rivera is the Secretary of Education for the Commonwealth of Pennsylvania. The Secretary is the head of the Department of Education and chief executive officer of the State Board of Education and is responsible for delivering and improving education services to the children of the Commonwealth. Secretary Rivera is responsible for the Bureau of Special Education. The Bureau of Special Education's role is to "ensure students (with special needs) have access to quality and meaningful education supports, services, and opportunities." He has failed to meet these responsibilties. Secretary Rivera maintains his principal office at 333 Market Street, Harrisburg, Pennsylvania 17126.

58.   The Pennsylvania Department of Education ("PDE") has the power and responsibility to "administer all of the laws of this Commonwealth with regard to the establishment, maintenance, and conduct of the public schools." 71 P.S. § 352(a). The mission of the PDE is to academically prepare children to succeed as productive citizens and to ensure the opportunities are in place for all students – regardless of their disability – to receive a high-quality education. PDE is the executive agency responsible for providing an adequate education system for all children in Pennsylvania, including members of the Plaintiff Classes defined herein. PDE receives federal funds that are used in the education of members of the Plaintiff

Classes. As the state education agency, PDE is ultimately responsible for ensuring a free, appropriate, public education for all students with disabilities in accordance with the IDEA. It has failed to meet these responsibilities. PDE has an office located at 333 Market Street, Harrisburg, Pennsylvania 17126.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this suit individually and as a class action pursuant to Rule 23(a), (b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all similarly situated individuals.

60.    The Plaintiff Class I is defined as nonverbal children with autism who use augmented/alternative communication ("AAC") and who are educated within public schools with a teacher to student ratio of not less than a 1 teacher/aide per 2 students ratio (for example, and as defined herein, Class Representative James has a 1 teacher/aide per 1 student ratio) within the Commonwealth of Pennsylvania and thus are defined by the Individuals with Disabilities in Education Act ("IDEA"), specifically 34 C.F.R. § 300.8, who have qualifying disabilities under Section 504 and who are afforded protection under the Americans with Disabilities Act.

61.    Plaintiff Class II is defined as partially verbal children with autism who use augmented/alternative communication ("AAC") and who are educated within public schools with a teacher to student ratio of not less than a 1 teacher/aide per 2 students ratio (for example, and as defined herein, Class Representative Brennan has a 1 teacher/aide per 1 student ratio) within the Commonwealth of Pennsylvania and thus are defined by the Individuals with Disabilities in Education Act ("IDEA"), specifically 34 C.F.R. § 300.8, who have qualifying disabilities under Section 504 and who are afforded protection under the Americans with

Disabilities Act.

62.    For children in both Plaintiff Class I and Plaintiff Class II, a "free appropriate public education" is, in fact, "life-sustaining." This is especially true if a "life-sustaining" service is defined as, for example, tobacco manufacturing, fireworks manufacturing, or hair replacement services.

63.    The individual named Plaintiffs' claims are typical of the claims of all members of the class as they have been deprived their rights to a "free appropriate public education" and because of the limitations of online learning are not having their education needs met as adequately as the needs of non-disabled children. For nonverbal children with autism and partially verbal children with autism who rely on an assisted communication device to communicate, such an education is, in fact, "life-sustaining" especially when looked at through the prism of Governor Wolf's definition of "life-sustaining" (e.g. cabinet makers, candy makers, casino construction, tobacco manufacturing, fireworks manufacturing, hair restoration services, etc.).

64.    Common questions of law and fact exist as to all members of each class. These common and legal factual questions include:

       a.    Whether the sole mode of public education currently offered to nonverbal children with autism who use augmented/alternative communication ("AAC") and who are educated within public schools with a teacher to student ratio of not less than a 1 teacher/aide per 2 students ratio (Plaintiff Class I) - online education - is violative of the IDEA and Section 504.

       b.    Whether the sole mode of public education currently offered to partially verbal children with autism (Plaintiff Class II) - online education - is violative of the IDEA and Section 504.

       c.    Whether education for nonverbal children with autism who use augmented/alternative communication ("AAC") and who are educated within public schools with a teacher to student ratio of not less than a 1 teacher/aide per 2 students ratio (Plaintiff Class I) is as "life-sustaining" as other businesses deemed "life-sustaining" through waivers approved by Governor Wolf e.g. cabinet makers, candy makers, casino construction, tobacco manufacturing,

fireworks manufacturing, etc.

d.      Whether education partially verbal children with autism who use augmented/alternative communication ("AAC") and who are educated within public schools with a teacher to student ratio of not less than a 1 teacher/aide per 2 students ratio (Plaintiff Class II) is as "life-sustaining" as other businesses deemed "life-sustaining" through waivers approved by Governor Wolf e.g. cabinet makers, candy makers, casino construction, tobacco manufacturing, fireworks manufacturing, etc.

e.      Whether there were alternative methods of instruction other than online education available for children in Class I and Class II.

f.      Whether Plaintiffs are entitled to compensatory education services, injunctive and equitable relief, and damages they seek.

65.    Plaintiff Class I is so numerous as to render joinder impracticable. Hundreds if not thousands of nonverbal verbal children with autism who rely AAC to communicate are failing to receive a "free appropriate public education" within the Commonwealth due to the lack of one-on-one instruction Members of the Plaintiff Class I require.

66.    Plaintiff Class II is so numerous as to render joinder impracticable. Hundreds if not thousands of partially verbal children with autism who rely AAC to communicate are failing to receive a "free appropriate public education" within the Commonwealth due to the lack of one-on-one instruction Members of the Plaintiff Class II require.

67.    A class action is the best available method for adjudicating these legal issues because individual litigation of these claims would be impracticable, and unduly burdensome of the courts.

68.    The named Plaintiffs, their representatives, and Class counsel will fairly and adequately represent the interests of the Class. The named Plaintiffs and their representatives have no interests in this matter that are antagonistic to other Class Members. Class counsel has many years of experience in plaintiff litigation and experience in class action litigation.

69.    Plaintiffs seek common declaratory and injunctive relief from the Court finding violations of the relevant laws and requiring Defendants Tom Wolf, Pedro Rivera, and PDE to

provide compensatory education services.

70.    This suit may be maintained as a class action pursuant to Rules 23(a), 23(b)(2) and (b)(3), Federal Rules of Civil Procedure, because all of the above factors of numerosity, commonality, typicality, and adequacy are present and common questions of law and fact predominate over questions affecting only individual members of the class. A class action is superior to other available methods of the fair and efficient adjudication of this litigation.

71.    Class treatment under Fed. R. Civ. P. 23(b)(2) is appropriate because the relief sough against Defendants Tom Wolf, Pedro Rivera and PDE consists of declaratory and injunctive relief with respect to Plaintiff Class I and Plaintiff Class II members. By acting to prevent the provision of an appropriate, legally compliant education Defendants have acted or refused to act on grounds that apply generally to these Classes. Prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Adjudications with respect to the rights of the individual class members, would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## FACTUAL ALLEGATIONS

72.    Like all public and private schools across the Commonwealth, CBSD was ordered to shut its operations by Governor Wolf on April 9, 2020.

73.    Schools educating nonverbal and partially verbal children with autism were not included Governor Wolf's "list of life sustaining businesses that may remain open."

74.    CBSD complied with Governor Wolf's order as his order further directed that "(e)nforcement actions will be taken against non-life sustaining businesses that are out of

compliance effective March 21, 2020, at 12:01 a.m."

75.    Because Governor Wolf shut all the public and private schools (the "Schools") in the Commonwealth under promise of "enforcement actions," none of the Schools are able to provide in person education to nonverbal and partially verbal children with autism.

76.    Governor Wolf, Secretary Rivera and PDE have to date failed to ensure that nonverbal and partially verbal children with autism who rely on AAC are receiving an education that is in compliance with the IDEA, Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

77.    Due to Governor Wolf's order shutting schools in the Commonwealth, exhaustion of the Plaintiff Class' administrative remedies under the IDEA would be "futile or inadequate" because the Schools "cannot grant relief" to the Plaintiff Classes in the form of resumption of their in-person education. Additionally, in light of the nature of the ongoing injuries of the Plaintiff Classes, "exhaustion (of the administrative remedies under IDEA) would work severe or irreparable harm upon" both Plaintiff Class I and Plaintiff Class II. *Beth V. by Yvonne v. Carroll*, 87 F.3d 80, 88-89.

78.    Nonverbal autism is a subset of autism where the person is unable to speak.

79.    Partially verbal autism is a subset of autism where sometimes the person is able to speak well, and other times find verbal speech difficult or impossible.

80.    According to the American Psychiatric Associations Diagnostic Statistical Manual, Fifth Edition (DSM-5), the Diagnostic Criteria for 299.00 Autism Spectrum disorder is:

> A. Persistent deficits in social communication and social interaction across multiple contexts, as manifested in the following, currently or by history (examples are illustrative, not exhaustive; see text):

1. Deficits in social-emotional reciprocity, ranging, for example, from abnormal social approach and failure of normal back-and-forth conversation; to reduced sharing of interests, emotions, or affect; to failure to initiate or respond to social interactions.

2. **Deficits in nonverbal communicative behaviors use for social interaction ranging, for example, from poorly integrated verbal and nonverbal communication; to abnormalities in eye contact and body language or deficits in understanding and use of gestures; to a total lack of facial expressions and nonverbal communication**.

3. Deficits in developing, maintaining, and understanding relationships, ranging, for example, from difficulties adjusting to behavior to suit various social contexts; to difficulties in sharing imaginative play or in making friends; to absence of interest in peers." Emphasis supplied.

81.    In light of the seriousness of this disorder, for children with autism – especially those with nonverbal and partially verbal autism who use an AAC – a free appropriate public education that comports with IDEA, Section 504 and the ADA is, in fact, "life-sustaining."

**A. James – Plaintiff Class I representative**

82.    Because of his disability, and since September 2018, James been in an autistic support classroom within CBSD.

83.    He is in school from approximately 8:15 AM until 3 PM each school day, or six hours and thirty minutes per day – **or thirty-two and half hours a week**.

84.    In contrast, his online education is only – at best – **one hour and fifteen** minutes **per week**.

85.    Pursuant to the IDEA, an individualized education program ("IEP") means "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with (the IDEA) and that includes…the projected date for the beginning of the services…., and the anticipated frequency, location, and duration of those services." 20 U.S.C. § 1414(d)(1)(A)(i)(VII).

86.    James and other Members of Plaintiff Class I have an "Individualized Education Program."

87.    James is nonverbal and requires speech-generating device to communicate.

88.    According to his IEP, James uses augmentative and alternative communication to communicate.

89.    According to his IEP, the "academic, developmental, and functional needs related to (James') disability include: building instructional stamina, expanding receptive identification of objects/pictures, requesting preferred foods/toys, following 1-step direction, expanding ability to play with toys, imitating motor movements, matching identical pictures, increasing self-care skills, (and) facilitating a functional grasp on writing utensils."

90.    He is one of six students in a "primary Autistic Support classroom." According to his IEP, James' classroom is staffed with a head teacher, four Personal Care Assistants, and one Educational Assistant (six in total). This constitutes a teacher/aide: student ratio of one to one. Consequently, James and the five other students in his classroom receive one-on-one in person instruction each school day.

91.    In contrast, online education removes the trained teacher or aide from the crucial "one-on-one" instruction James and other members of Plaintiff Class I rely upon for their continued education.

92.    For example, less than two weeks **before** Governor Wolf shut the schools in the Commonwealth, James' parents reported in his IEP "that James is having difficulty generalizing school goals, completely tasks independently, engaging in self-directed play, and using his talker (AAC) independently to request preferred items and use of the bathroom."

93.    Members of Plaintiff Class I require literal "hand over hand" instruction wherein a trained educator physically prompts and assists them to complete a task. Such interventions are literally impossible with online education.

94.    According to his IEP, James' typical daily schedule in his public school includes **two hours of one-on-one direct instruction** (per day) to reach his IEP goals, related services therapies including speech and occupational therapy services, snack, a sensory room break, as well as group activities (calendar, Unique Learning, read aloud, Math in Focus, crafts/themed activities).

95.    Currently, James receives **less than one hour and fifteen minutes** of *online* education **per week**.

96.    According to his IEP, James "enjoys time in the sensory room and has fun jumping on the trampoline and jungle jumparoo, taking walks or bike rides around the building, going down the slide, a sensory toy with bells inside, beads, punch balloons, playing with sensory worms, playing with any toy that has a string attached to it, edible reinforcers (pretzels, popcorn)."

97.    According to his IEP, "(w)hile navigating through the building, James will pull or wear a weighted backpack" as this has helped him "gain control of his body while walking and a staff member is always within arm's length of him in the halls…when walking outside, a staff member will hold James' hand to ensure his safety to prevent instances of elopement."

98.    According to his IEP, "James qualifies for ESY (Extended School Year) services based on the severity of his disability and regression/recoupment of skills."

99.    22 Pa. Code § 14.132(a)(2)(i) defines "regression" as "whether the student reverts to a lower level functioning as evidenced by a measurable decrease in skills or behaviors which occurs as a result of an interruption in educational programming."

100.    James and other Members of Plaintiff Class I have "revert(ed) to a lower level of functioning as evidenced by a measurable decrease in skills or behaviors" as a result of the

closure of schools across the Commonwealth.

101.  As of the date of this Complaint, and as a result of Governor Wolf's decisions, there is no plan to provide James with in-person ESY services as required by his IEP.

102.  In light of his IEP, and as a result of his education being limited to online learning, James and others in Plaintiff Class I are not receiving a "free appropriate public education" through online learning thus guaranteeing "regression."

103.  Furthermore, online learning does not meet the needs of nonverbal children with autism like James who rely on AAC as adequately as it does for non-disabled children who face no such challenges.

104.  That stated, James' teachers and therapists have made heroic efforts to help James through online learning. They have tried their very best to help him through online learning. But, as a result of James' disabilities, such efforts – no matter how heroic – have not enabled him to receive the education he is guaranteed under the IDEA, the ADA and Section 504.

**B.  Brennan– Plaintiff Class II representative**

105.  Because of his disability, and since September 2018, Brennan has been in an autistic support classroom within CBSD.

106.  Like James, Brennan has an IEP.

107.  Brennan is a partially verbal child with autism and requires a speech-generating device to fully communicate.

108.  He is in school from approximately 8:15 AM until 3 PM each school day, or six hours and thirty minutes per day – **or thirty-two and half hours a week**.

109.  In contrast, his online education is only – at best – **one hour and fifteen** minutes **per week**.

110. In contrast, online education removes the trained teacher or aide from the crucial "one-on-one" instruction Brennan and other members of Plaintiff Class II rely upon for their continued education.

111. Members of Plaintiff Class II require literal "hand over hand" instruction wherein a trained educator physically prompts and assists them to complete a task. Such interventions are literally impossible with online education.

112. According to his IEP, Brennan:

> "…uses verbal communication as well as augmentative and alternative communication (AAC). He utilizes an iPad with Proloquo2Go to support his communication needs. Brennan uses verbal language while participating in therapy sessions to respond to questions or request for preferred items. At times, he drops the final consonant within his words. When given verbal and visual models, Brennan will find familiar items on his talker (his AAC). **Brennan's talker is useful for communication repair to ensure that his message or wants/needs are being conveyed clearly**. He uses a token board to work for a reward during speech sessions. Brennan has been demonstrating increased difficult engaging throughout speech sessions. **He benefits from multiple verbal prompts to help redirect him to the task**." Emphasis supplied.

113. According to his IEP, the "academic, developmental, and functional needs related to (Brennan's) disability include: sharing and taking turns with games with adults and peers, following two-step directions in the classroom, independently completing an activity schedule, building sight word vocabulary through reading guided readers, responding to WH (who, what, when, where) questions, matching story sentences to pictures, counting using 1:1 correspondence to 20, counting out items from a larger group, expanding number ID, (and) expanding coin/bill identification."

114. Brennan is one of six students in a "primary Autistic Support classroom." According to his IEP, Brennan's classroom is staffed with a head teacher, four Personal Care Assistants, and one Educational Assistant (six in total). This constitutes a teacher/aide: student

ratio of one to one. Consequently, Brennan and the five other students in his classroom receive one-on-one in person instruction each school day.

115. According to his IEP, Brennan's "typical daily schedule includes two hours of 1:1 direct instruction in IEP goals and objectives."

116. According to his IEP, "there are certain areas of the building/times of the day that Brennan is likely to run from the group to gain access to preferred areas of the building, so it is important to remain within arms-length of him at all times when his hand is not being held…During arrival or dismissal time when the halls are crowded or when taking a walk outside of the building, Brennan should have his hand held for safety reasons as he is likely to run up to peers to touch their backpacks or run to the playground."

117. According to his IEP, "Brennan qualifies for ESY (Extended School Year) services based on the severity of his disability and regression/recoupment of skills."

118. As of the date of his Complaint, and as a result of Governor Wolf's decisions, there is no plan to provide Brennan with in-person ESY services as required by his IEP.

119. 22 Pa. Code § 14.132(a)(2)(i) defines "regression" as "whether the student reverts to a lower level functioning as evidenced by a measurable decrease in skills or behaviors which occurs as a result of an interruption in educational programming."

120. In light of his IEP, and as a result of his education being limited to online learning, Brennan and others in Plaintiff Class II are not receiving a "free appropriate public education" through online learning thus guaranteeing "regression."

121. Furthermore, online learning does not meet the needs of partially verbal children with autism like Brennan who rely on AAC as adequately as it does for non-disabled children who face no such challenges.

122. That stated, Brennan's teachers and therapists have made heroic efforts to help Brennan through online learning. They have tried their very best to help him through online learning. But, as a result of Brennan's disabilities, such efforts – no matter how heroic – have not enabled him to receive the education he is guaranteed under both the IDEA, the ADA and Section 504.

## CAUSES OF ACTION

### COUNT I

**GOVERNOR WOLF, SECRETARY RIVERA, AND THE PENNSYLVANIA DEPARTMENT OF EDUCATION VIOLATED THE RIGHTS OF THE PLAINTIFF CLASS I UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT AGAINST ALL DEFENDANTS**

(By James, individually and on behalf of all members of Plaintiff Class I)

123. Each of the preceding paragraphs is incorporated herein.

124. Named Plaintiff James is a member of Plaintiff Class I and qualifies as a "child with a disability" under the IDEA and "student with a disability."

125. By failing to include educational services for nonverbal children with autism as "life-sustaining" Governor Wolf has ensured that these children are not receiving a "free appropriate education" as guaranteed to them under the IDEA.

126. Through their actions and omissions, Governor Wolf, Secretary Rivera and the Pennsylvania Department of Education have all failed to ensure that Members of Plaintiff Class I receive the education they are entitled to under IDEA.

127. Named Plaintiff James has no adequate remedy at law.

128. Pursuant to the IDEA, Plaintiff is entitled to declaratory and injunctive relief and to recover from Governor Wolf the reasonable attorneys' fees and costs incurred in bringing

this action.

## COUNT II

### GOVERNOR WOLF, SECRETARY RIVERA, AND THE PENNSYLVANIA DEPARTMENT OF EDUCATION VIOLATED THE RIGHTS OF PLAINTIFF CLASS I UNDER SECTION 504 OF THE REHABILITATION ACT AGAINST ALL DEFENDANTS

(By James, individually and on behalf of all nonverbal children with autism educated in public schools in the Commonwealth of Pennsylvania)

129. Each of the preceding paragraphs is incorporated herein.

130. Plaintiff James and members of the Plaintiff Class was at all times relevant to this action, and is currently, a qualified individual with disabilities within the meaning of Section 504. He and members of the Plaintiff Class have impairments that substantially limit a major life activity and rely upon their instruction provided by their public schools to assist them with overcoming these impairments.

131. Governor Wolf's failure to include in person instruction for nonverbal children with autism as a "life-sustaining" business has excluded James and other members of the Plaintiff Class from receiving an education.

132. Through their actions and omissions, Governor Wolf, Secretary Rivera and the Pennsylvania Department of Education have all failed to ensure that Members of Plaintiff Class I receive the education they are entitled to under Section 504 of the Rehabilitation Act.

133. Defendant PDE receives federal aid to assist in the instruction of children like the Plaintiff Class protected under Section 504 of the Rehabilitation Act.

134. Defendant PDE knows that students with disabilities in the Commonwealth are entitled to equal access to the educational programs and services within their respective

districts. Despite this, Defendant PDE intentionally and/or with deliberate indifference has failed to ensure that the students of the Plaintiff Class have received a free appropriate public education and were free from discrimination on the bases of their disabilities.

135. Pursuant to Section 504, Plaintiffs are entitled to declaratory, injunctive and compensatory relief to recover from Defendants Tom Wolf, Secretary Pedro Rivera and the Pennsylvania Department of Education reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT III

**THE PENNSYLVANIA DEPARTMENT OF EDUCATION VIOLATED THE RIGHTS OF PLAINTIFF CLASS I UNDER THE AMERICANS WITH DISABILITIES ACT**

(By James, individually and on behalf of all nonverbal children with autism educated in public schools in the Commonwealth of Pennsylvania)

136. Each of the preceding paragraphs is incorporated herein.

137. Named Plaintiff James is a member of Plaintiff Class I and qualifies as a person with a disability under the ADA, is qualified to participate in a school program and has been denied the benefits of the program or otherwise subject to discrimination because of his disability as a result of the actions of the Pennsylvania Department of Education.

138. Defendant PDE was, at all times relevant to this action, and currently is a "public entity" within the meeting of Title II of the ADA.

139. Plaintiff James and members of Plaintiff Class I and are, at all times relevant to this action, and are currently "qualified individuals with disabilities."

140. Defendant PDE knew that James and members of Plaintiff Class I required reasonable accommodations to access educational programs.

141. Online education for members of Plaintiff Class I do not constitute reasonable

accommodations.

142.  Despite this, PDE has failed to provide accommodations for James for in person

instruction to him and other members of Plaintiff Class I.

143.  Pursuant to the ADA, Plaintiff James and other members of Plaintiff Class I are

entitled to declaratory, injunctive and compensatory relief and to recover from Defendant PDE

the reasonable attorneys' fees and costs incurred in bringing this action.

**COUNT IV**

**GOVERNOR WOLF, SECRETARY RIVERA, AND THE PENNSYLVANIA
DEPARTMENT OF EDUCATION VIOLATED THE RIGHTS OF THE
PLAINTIFF CLASS II UNDER THE INDIVIDUALS WITH DISABILITIES
EDUCATION ACT
AGAINST ALL DEFENDANTS**

(By Brennan, individually and on behalf of all members of Plaintiff Class II educated in
public schools in the Commonwealth of Pennsylvania)

144.  Each of the preceding paragraphs is incorporated herein.

145.  Named Plaintiff Brennan is a member of the Plaintiff Class II and qualifies as a

"child with a disability" under the IDEA and "student with a disability."

146.  By failing to include educational services for partially verbal children with autism

as "life-sustaining" Governor Wolf has ensured that these children are not receiving a "free

appropriate education" as guaranteed to them under the IDEA.

147.  Through their actions and omissions, Governor Wolf, Secretary Rivera and the

Pennsylvania Department of Education have all failed to ensure that Members of Plaintiff Class

II receive the education they are entitled to under IDEA.

148.  Named Plaintiff Brennan has no adequate remedy at law.

149.  Pursuant to the IDEA, Plaintiff is entitled to declaratory and injunctive relief and

to recover from Governor Wolf the reasonable attorneys' fees and costs incurred in bringing

this action.

## COUNT V

**GOVERNOR WOLF, SECRETARY RIVERA, AND THE PENNSYLVANIA DEPARTMENT OF EDUCATION VIOLATED THE RIGHTS OF THE PLAINTIFF CLASS II UNDER SECTION 504 OF THE REHABILITATION ACT**
**AGAINST ALL DEFENDANTS**

(By Brennan, individually and on behalf of all members of Plaintiff Class II educated in public schools in the Commonwealth of Pennsylvania)

150.  Each of the preceding paragraphs is incorporated herein.

151.  Plaintiff Brennan and members of Plaintiff Class II were at all times relevant to this action, and is currently, a qualified individual with disabilities within the meaning of Section 504. He and members of Plaintiff Class II have impairments that substantially limit a major life activity and rely upon their instruction provided by their public schools to assist them with overcoming these impairments.

152.  Governor Wolf's failure to include in person instruction for partially verbal children with autism as a "life-sustaining" business has excluded Brennan and other members of Plaintiff Class II from receiving an education.

153.  Through their actions and omissions, Governor Wolf, Secretary Rivera and the Pennsylvania Department of Education have all failed to ensure that Members of Plaintiff Class II receive the education they are entitled to under Section 504 of the Rehabilitation Act.

154.  Defendant PDE receives federal aid to assist in the instruction of children like the Plaintiff Class protected under Section 504 of the Rehabilitation Act.

155.  Defendant PDE knows that students with disabilities in the Commonwealth are entitled to equal access to the educational programs and services within their respective

districts. Despite this, Defendant PDE intentionally and/or with deliberate indifference has failed to ensure that the students of the Plaintiff Class II have received a free appropriate public education and were free from discrimination on the bases of their disabilities.

156. Pursuant to Section 504, Members of Plaintiff Class II are entitled to declaratory, injunctive and compensatory relief to recover from Defendants Tom Wolf, Secretary Pedro Rivera and the Pennsylvania Department of Education reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT VI

**THE PENNSYLVANIA DEPARTMENT OF EDUCATION VIOLATED THE RIGHTS OF PLAINTIFF CLASS II UNDER THE AMERICANS WITH DISABILITIES ACT**

(By Brennan, individually and on behalf of all partially verbal children with autism educated in public schools in the Commonwealth of Pennsylvania)

157. Each of the preceding paragraphs is incorporated herein.

158. Named Plaintiff Brennan is a member of Plaintiff Class II and qualifies as a person with a disability under the ADA, is qualified to participate in a school program and has been denied the benefits of the program or otherwise subject to discrimination because of his disability as a result of the actions of the Pennsylvania Department of Education.

159. Defendant PDE was, at all times relevant to this action, and currently is a "public entity" within the meeting of Title II of the ADA.

160. Plaintiff Brennan and members of Plaintiff Class II and are, at all times relevant to this action, and are currently "qualified individuals with disabilities."

161. Defendant PDE knew that Brennan and members of Plaintiff Class II required reasonable accommodations to access educational programs.

162. Online education for members of Plaintiff Class II do not constitute reasonable

accommodations.

163. Despite this, PDE has failed to provide accommodations for Brennan for in person instruction to him and other members of Plaintiff Class II.

164. Pursuant to the ADA, Plaintiff Brennan and other members of Plaintiff Class II are entitled to declaratory, injunctive and compensatory relief and to recover from Defendant PDE the reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Assert jurisdiction over this action;

B. Certify the Plaintiff Class as defined herein pursuant to Rule 23;

C. Award prospective injunctive relief – including but not limited to directing the Governor of Pennsylvania to classify in-person education of Members of Plaintiff Class I and Class II as a "life-sustaining" service –  and compensatory damages;

D. Declare unlawful Governor Wolf's orders omitting in person educational services for nonverbal and partially verbal children with autism pursuant to Rule 57 of the Federal Rules of Civil Procedure: The Individuals with Disabilities Education Act, 20 U.S.C § 1400 *et seq.*, including 34 C.F.R § 300.149 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C *et seq.* and the Americans with Disabilities Act of 1990 § 42 U.S.C. 12101;

E. Award to Plaintiffs the reasonable costs and expenses incurred in prosecution of this action, including reasonable attorneys' fees, pursuant to 34 CFR § 330.517, 29 U.S.C . § 794a(b), 42 U.S.C § 12205 and Federal Rule of Civil Procedure 23(h); and

F.  Grant such other further and equitable relief as the Court deems just, necessary,

and proper to protect Plaintiff Class I and Plaintiff Class II from further harm.

Dated: May 15, 2020

Respectfully submitted,

James J. Pepper (PA 92614)
The Pepper Law Firm, LLC
68 E. Court Street, Suite 2A
Doylestown, PA 18901
Telephone: (215) 340-2500
pepper@jamespepperlaw.com

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JAMES, LISA (JAMES' mother) BRENNAN, HEATHER (BRENNAN'S mother), on behalf of themselves and others similarly situated

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James J. Pepper
The Pepper Law Firm, LLC
68 E. Court Street Doylestown, PA 18901 Tel: 215-491-2500

## DEFENDANTS

Tom Wolf, Governor of Pennsylvania, Pedro Rivera, Pennsylvania Secretary of Education and Pennsylvania Department of Education

County of Residence of First Listed Defendant    Dauphin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY

- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS

- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☒ 446 Amer. w/Disabilities - Other
- ☒ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C § 1400 et seq. & Section 504 of the Rehabilitation Act of 1973
Brief description of cause:
Lawsuit against Defendants for violation of rights under IDEA and Rehabilitation Act of 1973 - § 504

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*    JUDGE _____    DOCKET NUMBER _____

DATE
05/18/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ James J. Pepper

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____